UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

VICTOR P KEARNEY,

    Appellant,

v.                                                     Civ. No. 18-888 JB/GJF

LOUIS ABRUZZO, et al.,

    Appellees.

## ORDER DENYING EMERGENCY MOTION FOR STAY PENDING APPEAL

THIS MATTER comes before the Court on Appellant's Emergency Motion for Stay Pending Appeal [ECF No. 3]. Appellant seeks a stay of the Bankruptcy Court's order modifying the automatic bankruptcy stay pursuant to 11 U.S.C. § 362. Having reviewed the parties' submissions, the record, and applicable law, the Court will deny the motion.

### I. PROCEDURAL BACKGROUND[1]

Appellant is the beneficiary of trusts established by his late wife, Mary Pat Abruzzo. ECF No. 6 at 56. Appellees Louis and Benjamin Abruzzo are the contingent remainder beneficiaries of their sister's trusts. *Id.* In 2013, the Appellant and the Abruzzo brothers filed cross-claims in New Mexico's Second Judicial District Court (State Court) for breach of fiduciary duty, as they all functioned as co-trustees. *Id.* at 70. The State Court concluded Appellant breached his fiduciary duties and that "good cause … exists for modification of the Mary Pat Abruzzo Trust, including but not limited to appointment of a Successor Trustee…." *Id.* at 71.

On September 1, 2017, before any trust modifications were made, Appellant filed a Chapter

---

[1] The following background derives from the District Court record and the underlying Bankruptcy Court docket. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records in [their own] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *In re Schupbach*, 607 Fed. App'x 831, 838 (10th Cir. May 19, 2015) (unpublished) (holding the appellate court may take judicial notice of the underlying bankruptcy docket).

11 bankruptcy case. *See* Case No. 17-12274-t11, Bankruptcy Docket No. ("BK No.") 1. The State Court action was automatically stayed pursuant to 11 U.S.C. § 362. About a week after the bankruptcy filing, the Abruzzo brothers filed a motion for relief from the automatic stay to resolve the remaining issues in the State Court litigation. BK No. 13. The Bankruptcy Court (Hon. David Thuma) heard the motion on November 22, 2017 and determined "all parties would be better served by attempting to mediate their differences and negotiate a plan of reorganization, rather than incurring attorney fees in further litigation." BK No. 111. Another Bankruptcy Judge, Hon. Robert Jacobvitz, agreed to act as mediator. *Id.* The Bankruptcy Court kept the stay motion under advisement but reserved the right to terminate the automatic stay "at any time it perceives that continuing the stay no longer benefits the [Abruzzo brothers] and the estate." *Id.* at 3.

Around the same period, the United States Trustee appointed an unsecured creditors' committee (UCC) in accordance with 11 U.S.C. § 1102. BK No. 103. The Abruzzo brothers are not members of the UCC, presumably because they may qualify as secured creditors by virtue of the trusts. *Id.* The UCC, Appellant, and the Abruzzo brothers participated in the mediation, but it was unsuccessful. BK No. 111. On August 13, 2018, the UCC proposed an amended Chapter 11 Plan of Reorganization (UCC Plan), which contemplates trust modifications. BK No. 360. The key points of the proposed UCC Plan are as follows:

1. The family business founded by the Abruzzos (ARCO) will pay $12,571,799 to Appellant's trusts in exchange for all ARCO stock held by the trusts.

2. The Abruzzo brothers will deliver a $3 million trust payment to Appellant, which would be delivered to creditors.[2]

3. Appellant's $350,890.55 priority tax debt will be paid from net income that would otherwise be distributable to Appellant from the trusts.

---

[2] It appears the $3 million payment to creditors will be deducted from the $12,571,799 figure. BK No. 360 at 6.

*Id.* at 6. Confirmation[3] of the UCC Plan is contingent upon State Court approval of these items, which are hereinafter referred to as the "Three Actions." ECF No. 3 at 1. Appellant proposed a competing Chapter 11 Plan of Reorganization (Debtor's Plan), which did not contemplate such trust modifications. BK No. 381.

On September 4, 2018, the Bankruptcy Court modified the automatic stay pursuant to 11 U.S.C. § 362 to allow the Abruzzo brothers to obtain a State Court hearing on the Three Actions. ECF No. 1 at 8. The Bankruptcy Court entered a second, substantive order modifying the automatic stay on September 18, 2018. *Id.* at 11-12. The second order permitted the Abruzzo brothers to pursue the Three Actions against Appellant in State Court. *Id.* Together, the orders are hereinafter referred to as the "Section 362 Orders."

Appellant filed the instant appeal challenging the Section 362 Orders on September 20, 2018. ECF. No. 1. He first sought a stay pending appeal in the Bankruptcy Court, as required by Bankruptcy Rule 8007(a)(1), which was denied. ECF No. 3 at 6. On the eve of the State Court hearing, Appellant removed the Three Actions to Federal District Court. ECF No. 1 in Case No. 18-cv-922 JCH/SCY. Appellees filed a motion to remand or abstain. ECF No. 4 in Case No. 18-cv-922 JCH/SCY. The Court (Hon. Judith Herrera) transferred the Three Actions to Bankruptcy Court in accordance with the standing referral of all bankruptcy jurisdiction. ECF No. 8 in Case No. 18-cv-922 JCH/SCY.

Between October 8 and 9, 2018, Appellant filed three emergency motions. In the first two

---

[3] Confirmation is a bankruptcy term of art. It occurs when the Bankruptcy Court approves a plan (either the debtor's plan or a creditor's plan) to repay all outstanding debts. 11 U.S.C. § 1129. Confirmation is typically the last step in a Chapter 11 bankruptcy case. The debtor then emerges from bankruptcy and repays creditors for the next five years or so in accordance with the plan terms.

motions, filed in Case No. 18-cv-922 JCH/SCY, Appellant asked the Court to withdraw the standing reference of bankruptcy jurisdiction and/or to stay proceedings. The Court initially entered a text-only order advising that Appellant was not entitled to relief on an emergency basis. ECF No. 10 in Case No. 18-cv-922 JCH/SCY. Appellant filed a second emergency motion the next day, prompting the Court to deny both motions. ECF No. 10 in Case No. 18-cv-922 JCH/SCY.

Appellant filed the emergency motion for a stay pending appeal in this proceeding on October 9, 2018. ECF No. 4. He seeks an order staying the Section 362 Orders in accordance with Bankruptcy Rule 8007. *Id.* The Court set an expedited briefing schedule, and the matter is fully briefed. ECF No. 6, 7, and 8. Appellees advise that since the motion was filed: (1) the Bankruptcy Court remanded the Three Actions to State Court; and (2) a State Court hearing on the Three Actions is set for October 23, 2018. ECF No. 6 at 4; ECF No. 7 at 6.

**II. DISCUSSION**

Appellant contends a stay must issue for two reasons. First, he argues the appeal divested the Bankruptcy Court of all jurisdiction pertaining to the Chapter 11 Plan confirmation process and the removal/remand proceeding. ECF No. 3 at 5-6; 16-19. Alternatively, Appellant argues the traditional injunction standards favor a stay. *Id.* at 6-16. For the reasons below, the Court is unpersuaded by either argument.

  A. <u>The Divestiture Doctrine Does Not Justify Relief</u>

"The filing of a notice of appeal is an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "[I]t confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the

appeal." *Id.* A notice of appeal does not stay the Bankruptcy Court from all further action, however. *See* Fed. R. Bankr. P. 8001. In accordance with Bankruptcy Rule 8007(e)(1), all "other proceedings in the [bankruptcy] case" may continue unless and until the Bankruptcy Court suspends them.

Appellant argues the remand proceedings and Plan confirmation process constitute "aspects of the case involved in" the Section 362 appeal.[4] ECF No. 3. Appellee UCC contends they constitute other, unrelated proceedings. ECF No. 6. Having considered the interplay between different sections of the Bankruptcy Code, the Court agrees with Appellee UCC. Section 362 "give[s] a debtor a breathing spell from his creditors," who must obtain Bankruptcy Court approval before continuing any pre-bankruptcy state court lawsuit. *In re Calder*, 907 F.2d 953, 957 (10th Cir. 1990) (quotations omitted). A creditor who willfully continues a pre-bankruptcy lawsuit without Court approval is subject to monetary sanctions. 11 U.S.C. § 362(k). Thus, the Section 362 Orders allowed the Abruzzo brothers to continue to pursue the State Court "proceeding against the debtor" and/or attempt to "recover a [pre-bankruptcy] claim against the debtor" without risking sanctions. 11 U.S.C. § 362. The Section 362 Orders resolved a discrete "contested matter," which is a litigable issue generated by a motion in the main bankruptcy case. *See* Fed. R. Bankr. P. 9014(a) – (e) (specifying rules relating to motions, service, testimony, and attendance by witnesses in contested matters).

Remand and plan confirmation are distinct from stay proceedings. The remand resolved a separate "adversary proceeding," or bankruptcy lawsuit. *See* Fed. R. Bankr. P. 7014 (specifying

---

[4] The remand issue appears moot, as the Bankruptcy Court already ruled, and Appellant's reply brief does not address the jurisdictional arguments. In the interest of thoroughness, and because it is unclear whether Appellant meant to abandon his jurisdiction arguments, the Court will address all matters raised in the Motion.

rules relating to complaints, service, and evidentiary hearings in adversary proceedings). The ruling determined *where* the Three Actions should proceed, rather than *whether* the Abruzzos could sue. Similarly, the UCC Plan generated its own contested matter focused on whether, and to what extent, the UCC's proposed repayment scheme complies with the requirements of the Bankruptcy Code. *See* 11 U.S.C. § 1129 (setting forth the Chapter 11 plan confirmation requirements). Appellant is correct that the ruling on stay relief, and any subsequent State Court ruling, impacts whether the plan is confirmable. However, the same is true of most pre-confirmation contested matters. The viability of a plan often depends on the allowance and liquidation of a creditor's claim under 11 U.S.C. § 503 and/or whether a tax debt has priority under 11 U.S.C. § 507. If appealing such matters automatically divested the Bankruptcy Court of jurisdiction over plan confirmation, obtaining a stay pending appeal would be unnecessary in most cases. Accordingly, the Court concludes that the appeal did not divest the Bankruptcy Court of jurisdiction over the remand or confirmation proceedings.

      B.    <u>The Traditional Injunction Factors Do Not Warrant a Stay Pending Appeal</u>

Before issuing a stay pending appeal, courts must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the probability of success" requirement is somewhat relaxed." *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003) (quotations omitted). However, the first two factors are the most

critical, and require more than a mere possibility. *See Nken*, 556 U.S. at 434.

Whether to grant a stay pending appeal rests in the sound discretion of the Court. *Id.* As the Supreme Court explained:

> A stay is an intrusion into the ordinary processes of administration and judicial review and is not a matter of right, even if irreparable injury might otherwise result… It is instead an exercise of judicial discretion …dependent upon the circumstances of the case.

*Id.* at 433–34. The movant "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.*

1. *Likelihood of Success on the Merits*

The first factor requires Appellant to demonstrate "a reasonable probability that he will ultimately" prevail on appeal. *Autoskill v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1487 (10th Cir. 1993). The appeal here turns on whether "cause" existed to lift the automatic stay under 11 U.S.C. § 362(d)(1). "[T]here is no clear definition of what constitutes 'cause,'" and "discretionary relief from the stay must be determined on a case by case basis." *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987). The parties agree that the widely-cited, nonexclusive factors identified in *In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984) are applicable. ECF No. 3 at 7; ECF No. 6 at 9; ECF No. 7 at 7. The twelve *Curtis* factors are:

> (1) whether the relief will result in partial or complete resolution of the issues;
> (2) the lack of any connection with or interference with the bankruptcy case;
> (3) whether the foreign proceedings involve the debtor as a fiduciary;
> (4) whether a specialized tribunal has been established to hear the case and whether it has the expertise to hear such cases;
> (5) whether the debtor's insurance carrier has assumed full financial responsibility for the defense;
> (6) whether the action essentially involves third parties;
> (7) whether the litigation would prejudice the interests of other creditors and interested parties;
> (8) whether any judgment in another forum is subject to equitable subordination under § 510(c);

(9) whether the movant's success in a foreign proceeding would result in a judicial lien avoidable by debtor under § 522(f);
(10) judicial economy;
(11) the degree to which the parties are prepared for trial; and
(12) the impact of the stay on the parties and the balance of the hurt.

*Id.* at 800-801.

The Bankruptcy Court weighed the relevant *Curtis* factors along with the factors set forth in *In re Crespin,* 581 B.R. 904 (Bankr. D.N.M. 2018)[5] and determined cause existed to lift the stay. The ruling points out that: (a) disputes about testamentary trusts are typically heard by the state court; (b) stay relief would expedite administration of the estate; (c) judicial economy would be served by allowing Second Judicial District Judge Alan Malott, who has long presided over the state court litigation, to hear the matter before his retirement; (d) other creditors would benefit from stay relief; (e) the proposed trust modifications raised a serious, litigable dispute; and (f) the balance of the hurt weighed in favor of granting relief from the stay. ECF No. 1 at 21-22.

Given the discretionary nature of stay relief and the deferential standard of review, the Court cannot find a reasonable probability that Appellant will prevail on appeal. There is substantial overlap between the Bankruptcy Court's own *Crespin* factors and the widely-cited *Curtis* factors. The emergency nature of the ruling and the absence of concrete evidence regarding Judge Malott's retirement do not necessarily reflect due process violations, as Appellant contends. The Bankruptcy Court previously conducted a final hearing on stay relief, and the matter remained under advisement pending case progress. Further, Appellant's argument that Judge Malott may commit error relating to trust modification, pleading requirements, etc. does not

---

[5] The *Crespin* factors are: (a) the existence of a specialized tribunal; (b) impact on estate administration; (c) impact on the claims allowance process; (d) judicial economy; (e) prejudice to other creditors; (f) likelihood of creditor's success; and (g) balance of the hurt. 581 B.R. at 909-910.

demonstrate error by the Bankruptcy Court. Section 362 focuses on whether creditors may continue collection actions against the debtor; it does not require bankruptcy judges to predict errors of law in another forum. *See* 11 U.S.C. § 362; *Pursifull*, 814 F.2d at 1506 (evaluating whether an issue would be "best decided by the [Texas] state court"). Accordingly, Appellant has not demonstrated a reasonable probability that he will succeed on the merits of the appeal.

2. *Irreparable Harm to Appellant*

To satisfy the second factor, Appellant must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Counsel, Inc.,* 555 U.S. 7, 22 (2008). He contends that absent a stay: (1) he will be forced to litigate in multiple forums; (2) the UCC's gamesmanship regarding stay relief will go unaddressed, and the State Court trust modification could reduce his income by 84%; (3) the State Court will violate his rights by proceeding on limited notice and without a stock valuation expert; and (4) the appeal will be rendered moot. ECF No. 3 at 12-15; ECF No. 8 at 9-11. Beyond detailing such harm, Appellant also asks this Court to appoint an independent valuation expert to analyze the price of his ARCO stock. ECF No. 3 at 14.

Appellant's first three arguments clearly fail. He is litigating in four forums because he initiated actions in four forums.[6] Any wrongdoing by the UCC goes to the merits of the appeal. As discussed above, federal courts do not function to predict and police future error in another forum, even if that ruling could result in a reduction in income. Further, this Court has no authority to appoint expert witnesses in a matter pending before the State Court.

---

[6] Appellant initiated the original State Court lawsuit in 2013; the bankruptcy case; this appeal; the removed action in New Mexico's Federal District Court; and a lawsuit for breach of fiduciary duty in Nevada's Federal District Court.

Appellant's argument regarding mootness is more complex, as he raises the adequacy of his legal remedies going forward. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1361 (10th Cir. 1989) (irreparable harm turns on the adequacy of the movant's legal remedies). Appellant points to a provision of the proposed UCC Plan that releases the Abruzzo/ARCO parties from all causes of action in exchange for a $3 million trust payment. ECF No. 8 at 9; BK No. 360 at 32. "Causes of action" is defined to include any appeal of the State Court ruling on trust modification. BK No. 360 at 13. Thus, Appellant contends that if the State Court modifies his trusts and the Bankruptcy Court subsequently confirms the UCC Plan, he will be unable to appeal any State Court ruling. At that point, it would be useless to appeal a ruling allowing the Abruzzos to litigate in State Court.

The Court is skeptical that the "irreparable harm" factor contemplates the attenuated domino-effect of several potential rulings by other courts, which theoretically at some point might render the appeal moot. Further, numerous courts have held that the "hazard of mootness, in and of itself, is not sufficient to show irreparable harm" in the bankruptcy context. *In re Sunflower Racing, Inc*., 225 B.R. 225, 228 (D. Kan. 1998) (widely cited among trial courts in the Tenth Circuit). *See also In re Scrub Island Development Group Ltd*., 523 B.R. 862, 878 (Bankr. M.D. Fla. 2015); *In re Red Mountain Mach. Co*., 451 B.R. 897, 908–09 (Bankr. D. Ariz. 2011); *In re Irwin*, 338 B.R. 839, 853 (E.D. Cal. 2006); *In re Fullmer*, 323 B.R. 287, 304 (Bankr. D. Nev. 2005); *In re Convenience USA, Inc*., 290 B.R. 558, 563 (Bankr. M.D.N.C. 2003)*; In re Shenandoah Realty Partners LP*, 248 B.R. 505, 510 (W.D. Va. 2000); *In re 203 North LaSalle St. Partnership*, 190 B.R. 595, 597 (N.D. Ill. 1995); *In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992); *In re Dakota Rail, Inc*., 111 B.R. 818, 821 (Bankr. D. Minn. 1990); *In re Public Serv. Co. of New*

*Hampshire*, 116 B.R. 347, 349–50 (Bankr. D. N.H. 1990).

Even if the potential rulings were considered, it is not clear the appeal would be moot absent a stay. The Bankruptcy Court does not intend to confirm the proposed UCC Plan until after the State Court rules. Appellant may appeal any adverse State Court ruling before the Bankruptcy Court holds a confirmation hearing, notwithstanding the proposed release/waiver of appeal rights in the UCC Plan. The existence of such appeal could impact the feasibility and confirmability of the UCC Plan, which Appellant is free to argue before the Bankruptcy Court. *See In re Paige,* 685 F.3d 1160, 1187 (10th Cir. 2012) ("A Chapter 11 plan cannot be confirmed unless it is feasible."). And if the Bankruptcy Court confirms the UCC Plan over Appellant's objection, such order is appealable until the Plan has been "substantially consummated."[7] *In re Paige,* 584 F.3d 1327, 1338 (2009). For these reasons, Appellant has not demonstrated he will likely suffer irreparable harm absent a stay.

3. *Harm to Other Parties*

Appellant next contends the Abruzzo brothers will not be harmed by a stay. ECF No. 3 at 15. He argues they are merely seeking a comfort order from the State Court, and that approval of any trust modification is not necessary to effectuate the UCC Plan. *Id.* As Appellees point out, this is not a two-party dispute. ECF No. 7 at 13-14. Appellant has been litigating - and accruing debts - since at least 2013. The debtor's lawyers are typically paid on a priority basis from estate funds, which would otherwise be available to creditors. 11 U.S.C. §§ 327 and 1107. Unless and

---

[7] The UCC Plan does not become effective until ten business days after entry of any confirmation order, giving Appellant time to perfect his appeal and seek a stay. BK No. 360 at 15 ("Effective Date" means the date ten (10) business days after all of the following conditions have been satisfied: (i) the Confirmation Order shall have been entered and shall be a Final Order…").

until a plan is confirmed, most creditors will not receive payment. Therefore, a stay will harm Appellees, who have a strong incentive to proceed towards confirmation.[8]

4. *Public Interest*

According to Appellant, the public interest requires bankruptcy debtors to receive an adequate "breathing spell" and prohibits creditors from "ramrod[ing] a … plan through" to confirmation. ECF No. 3 at 16. Appellant retained the benefit of the automatic bankruptcy stay for over a year, and the record reflects all parties have employed aggressive litigation methods. Therefore, the public interest does not favor a stay.

**III. CONCLUSION**

Having reviewed the parties' submissions, the relevant law, and the record, the Court orders that Appellant's Emergency Motion for Stay Pending Appeal [ECF No. 3] is **DENIED**.

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

[8] Much has been made about the fact that Judge Malott is retiring on October 31, 2018. *Compare* ECF No. 3 *with* ECF No. 9. Appellees accuse Appellant of attempting to stall and obtain a new judge, while Appellant maintains any impending retirement did not justify emergency stay relief. The retirement is relevant, but not dispositive, to whether other parties will be harmed by a stay pending appeal. Given how long the various matters have been pending, additional delay would be harmful regardless of who presided over the Three Actions.